IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **The Fraternal Order of Police, Capital City Lodge #9** and **Brian Steel**,<br><br>Plaintiffs,<br><br>v.<br><br>**The City of Whitehall**, **Chief Mike Crispen**, in his individual capacity, and **Mayor Michael Bivens**, in his individual capacity,<br><br>Defendants. | Civil Action No._____<br><br><br><br><br><br>**Jury Demand Endorsed Hereon** |

**Complaint**

"[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."
*Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972) (citations omitted).

"[B]ased on what I have and know at this time, the, the [FOP email] ban violates the First Amendment." "[W]e should lift the 'ban' for lack of a better term."
- Brad Nicodemus, Whitehall City Attorney

**Preliminary Statement**

The City of Whitehall, Mayor Michael Bivens, and Police Chief Mike Crispen have enacted a policy banning the Fraternal Order of Police, Capital City Lodge #9 ("FOP") and its President, Brian Steel, from using its email system—which Mayor Bivens refers to as an "open" and "public forum." The FOP—which represents over 4,000 police officers throughout central Ohio, including at the Whitehall Division of Police—has, for many years, used that open forum to communicate with its members as well as with other City leaders and elected officials about labor issues and other matters of public concern related to the FOP's mission.

The email ban harms the FOP, shows disregard for the men and women of law enforcement, and, most relevant here, violates the First Amendment. In fact, Mayor Bivens was publicly and expressly counseled by the Whitehall City Attorney that the ban violated the Constitution. Mayor Bivens was explicitly counseled by the City Attorney to lift the ban. Both Mayor Bivens and Chief Crispen have refused to lift the ban and comply with the Constitution, leaving the FOP with no recourse but to file suit. This suit seeks equitable relief restoring the FOP's email access as well as compensatory and punitive damages against Mayor Bivens and Chief Crispen.

### Jurisdiction and Venue

1. The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction).

2. Declaratory, equitable, and injunctive relief are sought pursuant to 28 U.S.C. §§ 2201-2202; 42 U.S.C. § 1983; and the common law of the State of Ohio.

3. Under 42 U.S.C. § 1983 and the statutory and common law of the State of Ohio, compensatory damages may be awarded against all Defendants and punitive damages may be awarded against Defendants Crispen and Bivens.

4. Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 54, and the common law of the State of Ohio.

5. Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1 because the claims arose in Franklin County, Ohio, where Defendant City of Whitehall is located and operates the Division of Police, headed by Defendant Chief Crispen, which in turn is overseen by Defendant Mayor Bivens.

## Parties

6. Plaintiff FOP is a labor union representing over 4,000 members of law enforcement throughout 29 law enforcement agencies in central Ohio. The FOP represents two bargaining units of employees at the Whitehall Division of Police: the officers unit and the supervisors unit (consisting of members in the rank of sergeant and lieutenant). The FOP is headquartered in Franklin County, Ohio.

7. Plaintiff Brian Steel, at all times relevant to this Complaint, has been the elected President of the FOP.

8. Defendant City of Whitehall is a political subdivision of the State of Ohio pursuant to Chapter 2744 of the Ohio Revised Code; is located in Franklin County, Ohio; at all times relevant to this Complaint, is the employer of Defendant Chief Crispen and Mayor Bivens; and has established policies regarding the banning of the FOP from the City's email system.

9. Defendant Mike Crispen, at all times relevant to this Complaint, has been employed by Defendant City of Whitehall as Chief of Police; is being sued in his individual capacity; and took part in the implementation of Defendant City of Whitehall's policy banning the FOP from using its email system.

10. Defendant Michael Bivens, at all times relevant to this Complaint, has been the elected Mayor of Defendant City of Whitehall; is being sued in his individual capacity; and took part in the implementation and ratification of the policy banning the FOP from using its email system.

**Facts**

FOP's Mission and Advocacy with Government Officials

11. Plaintiff FOP is an affiliate organization of the Fraternal Order of Police of Ohio, Inc. and the Grand Lodge of the Fraternal Order of Police.

12. The Mission Statement of the National Fraternal Order of Police reads:

> To support and defend the Constitution of the United States; to inculcate loyalty and allegiance to the United States of America; to promote and foster the enforcement of law and order; to improve the individual and collective proficiency of our members in the performance of their duties; to encourage fraternal, educational, charitable and social activities among law enforcement officers; to advocate and strive for uniform application of the civil service merit system for appointment and promotion; to support the improvement of the standard of living and working conditions of the law enforcement profession through every legal and ethical means available; to create and maintain tradition of esprit de corps insuring fidelity to duty under all conditions and circumstances; to cultivate a spirit of fraternalism and mutual helpfulness among our members and the people we serve; to increase the efficiency of the law enforcement profession and thus more firmly to establish the confidence of the public in the service dedicated to the protection of life and property.

13. Likewise, Plaintiff FOP was organized for the following purpose:

> [T]o promote the professionalism and fraternalism of its members; to encourage social, charitable and educational activity; to advocate the rigid and uniform application of civil service rules and regulations; to advance the interests of its members by and through the collective bargaining process and the laws of the State of Ohio addressed thereto; to enhance the efficiency of the law enforcement profession and to more firmly establish the confidence of the public in our service dedicated to the protection of life and property. It shall be the duty of the Lodge to ensure that all laws providing for the advancement and protection of law enforcement officers are upheld.

14. Plaintiff FOP advances the purpose of its organization and interests of its members in several ways: collective bargaining, the grievance and arbitration process, community, charitable, and educational endeavors, and engaging in advocacy with government and elected officials, both directly and indirectly.

15. Plaintiff FOP engages in direct advocacy with government and elected officials in various ways: testifying before governmental bodies such as city councils, the Ohio General Assembly, or Congress; screening and endorsing political candidates; meeting with governmental or elected officials; or communicating directly with such officials over the phone or email.

16. Plaintiff FOP also engages in indirect advocacy with government and elected officials by, for example, holding votes of "no confidence"; giving comments or interviews to members of the media; issuing press releases; passing petitions; educating the public regarding detrimental governmental policies and decisions; or pressuring governmental or elected officials through media campaigns using, for example, social media, billboard advertisements, or even creative means such as airplane banner advertisements.

Illustration of FOP's Advocacy Regarding City of Whitehall

17. For several years, Plaintiffs FOP and Steel have advocated better working conditions for their members employed by Defendant City of Whitehall.

18. In furtherance of the FOP's mission, Plaintiffs have also advocated for the rule of law and adherence to the Constitution and argued that Defendant City of Whitehall has violated its residents' trust in law enforcement and undermined public safety.

19. For example, Plaintiffs FOP and Steel have publicly alleged, on multiple occasions, that Defendants City of Whitehall and Crispen have operated a ticketing "quota system" in violation of the law.

    a) Plaintiff Steel has testified before Whitehall City Council and urged City Council to investigate, among other things, the quota system operated by Defendant Crispen.

b) President Steel has also, on multiple occasions, communicated directly with members of City Council, including by email, regarding issues with the Whitehall Police Department and Defendant Crispen.

c) Plaintiffs FOP and Steel have also used a "mobile billboard" operated within Whitehall to raise awareness of the quota system.

d) Plaintiff Steel testified before the Ohio General Assembly and advocated for a proposed Ohio statute prohibiting ticket and arrest quotas. Plaintiff Steel expressly testified that, "law enforcement's primary objective should always be the preservation of public safety and the fostering of trust between police officers and the communities they serve." He further testified that quotas "can lead to negative interactions between law enforcement and community members, ultimately eroding public trust." Finally, he testified in support of the proposed bill's "accountability provisions, allowing officers to anonymously report the use of quotas, which will prompt investigations by the attorney general."

e) Defendant Crispen publicly and staunchly advocated against the proposed statute.

f) The Ohio General Assembly ultimately passed a bill, Senate Bill 114, prohibiting arrest and ticket quotas. In fact, that bill was passed unanimously by both the House and Senate. The bill was signed into law by Governor DeWine and became effective September 30, 2025.

Defendant City of Whitehall's Email System

20. Defendant City of Whitehall publicly posts on its official website a staff directory containing contact information and email addresses for Defendant Bivens, City Attorney Nicodemus, members of Human Resources, members of City Council, and every member

of the Whitehall Division of Police—including bargaining unit members as well as Defendant Crispen, the deputy chiefs, and civilian employees.

21. Plaintiff Steel, elected board members of the FOP, numerous FOP grievance representatives, and employees of the FOP use an FOP email address with the domain "@fop9.org."

22. Plaintiff Steel, FOP elected board members, FOP grievance representatives, and FOP employees use their FOP email to communicate with the following at Defendant City of Whitehall: Defendant Bivens, Defendant Crispen, the deputy chiefs, FOP bargaining unit members, civilian employees, City Attorney Nicodemus, and individual City Council members.

23. Plaintiffs Steel and FOP—including its elected board members, grievance representatives, and employees—have used Defendant City of Whitehall's email system for many years.

24. Plaintiffs FOP and Steel use their FOP email to communicate with elected and governmental employees of the City of Whitehall for the purpose of collective bargaining and the grievance and arbitration process, but also to engage in advocacy on matters such as adherence to the Constitution and rule of law, public safety, trust in law enforcement, and other matters of public concern germane to the mission and purpose of the FOP.

25. Defendants Bivens and Crispen regularly use their Whitehall email addresses to send and receive communications with others.

26. In fact, nearly every employee and elected official at the City of Whitehall regularly uses a Whitehall email address to send and receive communications with others.

FOP's Ban from Defendant City of Whitehall's Email System

27. On or about January 16, 2025, Plaintiff Steel sent an email from his FOP email address to members of the supervisor bargaining unit at the Whitehall Division of Police. He also intended to send that email to several deputy chiefs of police, who, while not in the bargaining unit, were nonetheless members of the FOP.

28. At that time, Defendant City of Whitehall's email directory listed the email address for two of those deputy chiefs as "PDchiefs@whitehall-oh.us." Accordingly, Plaintiff Steel included that email address in the January 16, 2025 email.

29. The email sent by Plaintiff Steel attached a letter which applauded the supervisors on a recent vote concerning FOP representation. Plaintiff Steel noted in the letter, "This vote sends a powerful and unmistakable message to Chief Crispen: despite his failed leadership and attempts to divide us and weaken our union, we stand united. Your decision demonstrates strength, solidarity, and a shared belief in the values and protections that FOP Capital City Lodge #9 provides."

30. That same day, Defendant Crispen replied to Plaintiff Steel's email and told him to "stop sending these emails to the chiefs' account." Defendant Crispen added that if he continued sending such emails then "your email will be blocked from our system."

31. Plaintiff Steel replied to that email noting his original email "was intended for FOP 9 members, including Dep[uty] Chiefs, who are still active."

32. On or about February 7, 2025, Plaintiff Steel sent an email from his FOP email address to FOP bargaining unit members at the Whitehall Division of Police as well as the "PDchiefs@whitehall-oh.us" email as that was, to Plaintiff Steel's knowledge, still the listed email for at least two deputy chiefs—again, who were members of the FOP.

8

33. That email provided clarity regarding an event that had occurred the night prior: Specifically, Plaintiff Steel had attempted to enter a public event being hosted at the Whitehall Police Department when he was initially denied entry by Whitehall Deputy Chief Chad Wilder. That email sought to dispel rumors that had been circulating about the incident.

34. According to Defendant Crispen, "Immediately after [the February 7, 2025] email, I contacted IT Director Michael Isaac and directed that Steele's (sic) email account be blocked."

35. Defendant City of Whitehall did in fact block Plaintiff Steel's email at Defendant Crispen's direction. Under that block, Plaintiff Steel was initially unable to email any person at the City of Whitehall, including the FOP's own bargaining unit members.

36. On or about September 8, 2025, Defendant Bivens acknowledged, in writing, that Plaintiff Steel had been "blocked" from the City's email system. Defendant Bivens maintained that Plaintiff Steel would be permitted, however, to email members of the bargaining units.

37. While Defendants Bivens and Crispen maintained the block would only apply to Plaintiff Steel, *every* FOP elected board member, grievance representative, and employee has been unable, using an FOP email address, to email nearly every City of Whitehall employee—including civilian employees, City Attorney Nicodemus, every member of City Council, and, for most of the time the ban has been in place, Defendants Bivens and Crispen. The only exception is that, at times, emails to bargaining unit members have been permitted.

38. Of course, not every email sent from the FOP to a bargaining unit member has bypassed the block—even after the block was purportedly lifted as to bargaining unit members. For

9

example, on or about September 18, 2025, FOP grievance representative Don Fletcher was blocked from sending an email to several bargaining unit members.

Whitehall City Attorney Nicodemus Publicly Announces Email Ban Is Unconstitutional, and City Council Members Express Outrage

39. On September 9, 2025, the Whitehall City Council held a regular meeting. That meeting was audio and video recorded.

40. During that meeting, the FOP email ban was discussed by members of City Council, Defendant Bivens, and Whitehall City Attorney Brad Nicodemus.

41. The day before that meeting, Defendant Bivens had admitted, in writing, that Plaintiff Steel had been "blocked" from Defendant City of Whitehall's email system.

42. At that meeting, Councilman Gerald Dixon announced that he had been "blocked from getting emails" from Plaintiff FOP.

43. Councilman Dixon asked Defendant Bivens about the blockage and Defendant Bivens referred him to the collective bargaining agreement between Plaintiff FOP and Defendant City of Whitehall.

44. Councilman Dixon asked Defendant Bivens where the collective bargaining agreement allowed Defendant City of Whitehall to block emails to members of City Council, but Defendant Bivens was unwilling or unable to say. Instead, Councilman Dixon was told to "sift through" the agreement for himself.

45. At that same meeting, City Attorney Brad Nicodemus announced that he too had been blocked from receiving the FOP's emails. Specifically, he noted, "*I have concerns with the city blocking an entire organization, um, because then it seems to be content based, who's saying it, not time, place, manner restrictions*." He added that, "I'm not very happy at the moment."

10

46. At that same meeting, Councilman Morrison—the Chairperson of the Public Safety Subcommittee—referred to the block as "censorship."

47. On September 23, 2025, the Whitehall City Council held a regular meeting. That meeting was audio and video recorded.

48. During that meeting, the FOP email ban was again discussed by members of City Council, Defendant Bivens, and Whitehall City Attorney Brad Nicodemus.

49. City Attorney Nicodemus announced that he had conducted legal research regarding the email ban.

50. He first discussed, in detail, a case from the Southern District of Ohio that he believed was on point. One of the central holdings in that case, he remarked, was that "A ban on sending emails violates a content neutral time, place, manner restrictions, and violates the First Amendment right to petition, uh, the government." He analogized that act to City Council allowing only certain people to speak at Council meetings. He concluded that Defendant City of Whitehall's email ban targeting Plaintiff FOP "*violates the First Amendment*" and that Defendant City of Whitehall "*should lift the 'ban' for lack of a better term*."

51. City Attorney Nicodemus's legal opinion enraged Defendant Bivens.

52. Defendant Bivens acknowledged Defendant City of Whitehall had in fact implemented a policy blocking the FOP's emails to non-bargaining unit members—just as he had previously, in writing.

53. Defendant Bivens defended the email ban by arguing Defendant City of Whitehall was adhering to contract language contained in the collective bargaining agreement.

54. In response, City Attorney Nicodemus asked Defendant Bivens if he was arguing "that the FOP negotiated away First Amendment privileges to be able to redress and petition

11

government"? Defendant Bivens was unwilling or unable to answer the question. Instead, he seemed to imply that within the Sixth Circuit and/or Southern District of Ohio labor unions did not have First Amendment rights or that unions could bargain away such rights. He cited no case law to that effect, however.

55. Of course, there is no case law holding either that labor unions have no First Amendment rights or that labor unions can bargain away its or its members' First Amendment rights. Even if there was, though, there is no provision in the collective bargaining agreement waiving any First Amendment protections.

56. Likewise, Whitehall Councilman Dixon argued that Defendant Bivens' explanation regarding the collective bargaining agreement was puzzling since he had been getting emails "for over three years" from the FOP and the contract language regarding emails had never changed in that time.

57. Councilman Dixon also argued that "seemingly for some issue that, uh, the FOP between the FOP and the, the, uh, upper brass and the police department and the administration were having, suddenly then I'm not getting emails, or I'm seemingly blocked from getting emails from the FOP where I had enjoyed getting them all this time."

58. Councilman Dixon added,

> And so that seems to me personally, that there is some beef, which has now moved over into my business as a councilman to receive emails that I had always been getting. So I don't care what other people's beefs are. I don't have a beef with the FOP. If they need to contact me as they have done so for over three years now suddenly they can't. And that is my issue. And I ask the City Attorney, what then can I do to stop this? Because I'm outraged by this fact that suddenly I can't get emails from the FOP. What can I as a councilman do? Am I just a citizen up here, or do I have some, uh, uh, power as a councilman to do something about this outrage?

59. City Councilmen Dixon and Morrison represented that because of the email ban they could not send emails to Plaintiff Steel's FOP email address.

60. In response, Defendant Bivens called Councilman Dixon a liar and told Councilman Morrison he was possibly mistaken.

61. During that same meeting, Councilwoman Elmore launched into a tirade arguing that "the FOP [was] circumventing the mayor to go to council." She also lamented "the FOP and how they're utilizing information and how they're using one of our council people to circumvent and push their, uh, push uh, a certain agenda…." She asked, "why are we allowing [Plaintiff Steel] to circumvent administration to *petition us* to carry his water?"

62. During that meeting, Defendant Bivens explicitly noted, with regard to the City of Whitehall's email system, that "*We are an open forum. We are a public forum*."

63. On October 14, 2025, the Whitehall City Council held a regular meeting. That meeting was audio and video recorded.

64. During that meeting, the FOP email ban was yet again discussed by members of City Council and Defendant Bivens.

65. At that meeting, Councilman Morrison requested an update from Defendant Bivens regarding the email ban. Defendant Bivens relayed that he had no update and that he had no idea when such an update would be provided.

The Email Ban is Still in Effect Except to Defendants Bivens and Crispen (For Now)

66. On October 28, 2025, the Whitehall City Council held a regular meeting. That meeting was audio and video recorded.

67. During that meeting, the FOP email ban was yet again discussed by members of City Council and Defendant Bivens.

13

68. Now, perhaps due to the fast-approaching election, Mayor Bivens announced he was reversing course: moving forward, members of City Council would be permitted to send emails to anyone with an FOP email address.

69. In response to a question from Council President Potter regarding the prior ban, Defendant Bivens bizarrely stated, "There has not been a block of any Whitehall emails," but that "if that has happened, it was negligible and fixed."

70. Of course, Defendant Bivens was aware that Defendant Crispen had admitted, in writing, to contacting the City's IT Director so that Plaintiff Steel's email could be "blocked."

71. Moreover, just a month prior, Defendant Bivens himself had admitted, in writing, there was an email block on the FOP.

72. In fact, at the City Council meeting held on September 23, 2025, Defendant Bivens defended the block and argued it was permitted under the collective bargaining agreement.

73. Perhaps the most troubling falsehood, however, was that the email ban had been lifted: The day after that meeting, on October 29, 2025, Plaintiff Steel sent emails to Councilmen Dixon and Morrison. Both emails were blocked.

74. On October 29, 2025, Plaintiff Steel sent an email to City Attorney Nicodemus. That email was likewise blocked.

75. On or about October 29-30, 2025, Plaintiff Steel sent emails to Defendant Bivens and Crispen and neither email was blocked as Plaintiff Steel received no blockage error message and both Defendants replied to Plaintiff Steel.

76. On October 30, 2025, Plaintiff Steel emailed Councilwoman Elmore, and that email was also blocked.

77. It appears that as of the filing of this action, Plaintiff Steel and other members of the FOP can email bargaining unit members and Defendants Crispen and Bivens.

78. But upon information and belief, the email ban is still in effect as to every other employee and elected official at Defendant City of Whitehall.

79. And indeed, at any time Defendants can reinstitute the email ban as to Defendants Bivens and Crispen.

Impact of the Email Blockage

80. Defendants' email blockage has required Plaintiff FOP to expend time and resources to navigate around the ban to convey vital information to Defendant City of Whitehall.

81. For example, on or about October 27, 2025, an employee of Plaintiff FOP was required to send multiple emails to employees of Defendant City of Whitehall because of the ban. That email pertained to an issue regarding membership dues that needed to be addressed by Defendant City of Whitehall.

82. The first email was sent to Karina Large, a Payroll Specialist. That email was blocked. The employee then emailed Kim Highfield, an Accounting Specialist, but that email too was blocked. She then emailed Tracy Wentz, Human Resources Director for Defendant City of Whitehall. Yet again, the email was blocked. The employee of Plaintiff FOP also sent that email to City Attorney Nicodemus. But just like the others, it was blocked.

83. Instead of simply emailing one employee, the ban necessitated expending time and resources emailing multiple employees of Defendant City of Whitehall.

84. Of course, while time and money are important, the biggest impact has been Plaintiff FOP's inability to communicate with Whitehall City leaders and elected officials on matters of

public concern germane to the FOP's mission. Likewise, the FOP is unable to petition any member of City Council regarding issues central to its mission.

85. For example, on October 10, 2025, Plaintiff Steel emailed Councilman Dixon and stated, "Thank you for continuing to advocate for accountability and transparency.  I would like to hear city councils plan to increase police staffing to 60 as promised to community."

86. As that email was blocked, Plaintiff Steel was unable to communicate with an elected official about a matter which goes to the heart of the FOP's mission—public and officer safety, transparency and accountability, as well as upholding the rule of law generally—and indisputably constitutes core political speech.

87. Until the ban is lifted, Plaintiffs FOP and Steel—and the over 4,000 law enforcement officers on whose behalf they speak—will be unable to engage in the advocacy and core political speech enjoyed by every other citizen or labor organization.

## Cause of Action

### Violation of First and Fourteenth Amendment Rights – As to all Plaintiffs

88. Plaintiffs incorporate and reallege the above allegations as if fully restated herein.

89. Defendants have adopted and enforced a policy prohibiting Plaintiff FOP and Plaintiff Steel from using the City's email system to communicate with City leaders, elected officials, and City employees.

90. The policy adopted by Defendants has been applied only to Plaintiff FOP and Plaintiff Steel and no other labor organization, union leader, or, upon information and belief, any other person or organization attempting to petition City of Whitehall elected officials or employees via email.

91. The policy violates the First Amendment and constitutes speaker-based, content-based, and viewpoint-based discrimination.

92. The policy impedes Plaintiffs' ability to petition the government for redress of grievances and to engage in core political speech.

## Prayer for Relief

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally:

a) declaring the policy implementing the email ban is unconstitutional under the First and Fourteenth Amendments;

b) ordering such equitable relief requiring that the unconstitutional email policy be permanently enjoined and the ban lifted and to ensure prospectively that they are protected from future similar conduct;

c) awarding costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

d) awarding compensatory or, in the alternative, nominal damages, and against Defendants Crispen and Bivens, punitive damages; and

e) granting such other relief as the Court may deem appropriate.

Respectfully submitted,

*/s/ Lathan Lipperman*
Lathan J. Lipperman (0095523)
Cathrine Harshman (0079373) – Lead Counsel
Nicole E. Wannemacher (0078095)
Harshman, Wannemacher, Tipton & Lipperman
4683 Winterset Drive
Columbus, Ohio 43220
Phone: (614) 437-9854
Fax:     (614) 573-6948
Email: llipperman@hcands.com
           charshman@hcands.com
           nwannemacher@hcands.com

*Attorneys for Plaintiffs Fraternal Order of Police,
Capital City Lodge #9 and Brian Steel*

## Jury Demand

Plaintiffs demand a trial by jury on all issues and defenses triable to a jury.

By: */s/ Lathan Lipperman*
Lathan Lipperman (0095523)