IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE FRATERNAL ORDER OF POLICE, et al. | : | Case No. 2:25-cv-1269 |
| | : | |
| | : | Judge Sarah D. Morrison |
| Plaintiffs, | : | |
| | : | |
| v. | : | **MOTION TO DISMISS OF** |
| | : | **DEFENDANT MAYOR MICHAEL** |
| THE CITY OF WHITEHALL, et al. | : | **BIVENS** |
| | : | |
| Defendants. | : | |

Defendant Mayor Michael Bivens respectfully moves this Court to dismiss the Complaint of the Fraternal Order of Police ("FOP") and its President, Brian Steel. As demonstrated herein, Plaintiffs fail to sufficiently assert a constitutional claim. Bivens is also entitled to qualified immunity because the Complaint does not plead a violation of any clearly established constitutional right. Thus, the sole purported cause of action against Bivens should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

*/s/ Janica Pierce Tucker*
Janica Pierce Tucker (0075074)
David C. Roper (0099782)
**TAFT STETTINIUS & HOLLISTER LLP**
41 S High St, Suite 1800
Columbus, Ohio 43215
Tel.: (614) 221-2838
Fax: (614) 221-2007
*jpierce@taftlaw.com*
*droper@taftlaw.com*

*Counsel for Defendant*
*Mayor Michael Bivens*

**MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

This case arises from a dispute about an email that FOP President Brian Steel sent to Whitehall employees about the purported "failed leadership" of Police Chief Mike Crispen (the "failed leadership email"). In the months after Steel sent that email, Bivens instituted measures to prevent Steel from undermining Crispen with more ad hominem attacks using Steel's FOP email address.

For all its broadly framed assertions and meandering allegations, the Complaint's sole cause of action is unviable and presents just one question: did the decision to filter emails from Steel's FOP account after the failed leadership email cause a constitutional injury? The answer is no.

The Complaint challenges Bivens' email filtering decision in a single cause of action alleging unlawful retaliation under the First and Fourteenth Amendments. To begin, the Complaint's cause of action fails to distinguish between its allegations against Bivens as an individual, on one hand, and Whitehall on the other. But even if the Complaint contained a properly formed individual capacity claim, the facts alleged reveal that Steel used the City's email system in an improper manner. The Constitution does not give Steel any right to undermine confidence in the Whitehall police department and sabotage the morale of its officers with his ad hominem attacks against Crispen. Nor did the collective bargaining agreement between the FOP and Whitehall allow for Steel's email abuses. And even if Steel's factual allegations presented a colorable constitutional claim, Bivens is immune from suit, as there was no clearly established law to foreclose the email filtering decision. For all these reasons, the purported cause of action against Bivens should be dismissed with prejudice.

2

## II.     FACTUAL BACKGROUND[1]

The Complaint paints a clear and unambiguous picture of the events that prompted Bivens to authorize the email filtering decision. Steel's baseless and unsupported attacks began on January 16, 2025, when he sent an email chastising Crispen's "failed leadership" of the Whitehall Police Department and lauding the results of a recent election as a "powerful and unmistakable message" to city leadership. (ECF No, 1, PageID 8.) The failed leadership email provided no details on why Chief Crispen might be considered a failed leader. Nor did it accuse Chief Crispen of impropriety in the performance of his duties.

Steel sent the failed leadership email to members of the bargaining unit at the Whitehall Division of Police and several other Whitehall officials, including Crispen. (*Id.*) Crispen replied directly to Steel, asking him to stop sending emails to the chief's account and stating that, if Steel continued sending such emails, his address would be blocked from Whitehall's system. (*Id*.) Despite that warning, Steel continued to use his FOP email account to email Whitehall officials about matters entirely unrelated to bargaining unit representation. (*Id.*, PageID 9 (describing Steel's efforts to dispel "rumors" about his personal involvement in a February 6, 2025 "incident" at the Whitehall Police Department.)

Next, Crispen contacted the Whitehall IT Director and requested the blockage of Steel's FOP email account. (*Id.*) More than 5 months later, in September 2025, Bivens acknowledged that Steel's FOP email had been restricted in Whitehall's system. (*Id.*) Steel and the FOP allege that this email filtering decision violates their constitutional rights, and their Complaint advances a single cause of action against Bivens, Crispen, and Whitehall. (*Id.*, PageID 16–17.)

---

[1] For purposes of this motion, Bivens does not challenge the truth of the allegations in the Complaint, though nothing in this filing should be construed as a binding admission if this case proceeds past the pleading stage.

### III.    LEGAL STANDARD

Every complaint must allege sufficient facts to support a plausible claim to relief. *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 524 F. Supp.3d 762, 769 (S.D. Ohio 2021) (reciting the familiar *Twombly*/*Iqbal* plausibility standard). In the context of a constitutional tort claim, the relevant pleading must plausibly allege the deprivation of a right secured by the Constitution caused by a person acting under the color of state law. *Eljin Corp. v. Ohio Dep't of Health*, 2025 WL 1222567, at *7 (S.D. Ohio Apr. 28, 2025) (quoting *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018)).

In addition, Section 1983 defendants may assert their qualified immunity defenses at the pleading stage. *Jackson v. Shultz*, 429 F.3d 586, 589 (6th Cir. 2005). While the grant of a motion to dismiss based on qualified immunity is "generally inappropriate," a complaint should be dismissed when, as here, "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Venema v. West*, 133 F.4th 625, 632 (6th Cir. 2025); *see, e.g.*, *Jackson*, 429 F.3d at 589–90, 592 (analyzing the unambiguous factual allegations in a complaint and dismissing it, finding no case law to establish "a constitutional right . . . under these exact (or even vaguely similar) circumstances").

### IV.    LAW AND ARGUMENT

To be clear from the outset, the case does not need further factual development for the Court to dismiss it for lack of constitutional merit and find Bivens immune from suit. The Complaint has more than enough detail and no more information is necessary to resolve this case. The email screening decision was a direct consequence of the failed leadership email. (ECF No.

1, PageID 8.) Quite simply, Steel had no right to use Whitehall's email system to degrade the good order of its police department.

Dismissal is appropriate for three primary reasons. *First*, the Complaint contains just one cause of action, but Plaintiffs cannot assert individual liability claims and claims against Whitehall using the same vehicle. *Second*, Steel's failed leadership email is not protected speech because it unambiguously flunks the *Pickering* balancing test and the plain terms of the enforceable collective bargaining agreement between Whitehall and the FOP—all without a constitutional harm. *Third*, Plaintiffs cannot identify the "clearly established" case law necessary to support their purported constitutional allegations because it does not exist. No federal court has ever found that the First Amendment requires local government officials to allow a police officer to undermine police department operations with groundless attacks against its leadership.

## A. The Complaint Cannot Advance a Single Claim for Individual Liability and Municipal Liability.

A threshold problem with the Plaintiffs' case is that they cannot proceed against Bivens and Crispen as individuals, *and* the City using a single cause of action.

Section 1983 plaintiffs must distinguish between claims of individual liability and municipal liability claims. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *see, e.g.*, *Williams v. Cuyahoga Cnty.*, 776 F. Supp.3d 653, 675–76 (N.D. Ohio 2025) (dismissing claims against two public officials because the complaint did not distinguish between the claims against them and the claims against the county). Put another way, "a municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Martinez v. Wayne Cnty.*, 142 F.4th 828, 843 (6th Cir. 2025). The inverse is true as well. Ultimately, individual liability and municipal liability claims are distinct actions that require entirely separate analyses. *Id.* at 835–46.

5

The Complaint fails this basic requirement by lumping its grievances against Bivens, Crispen, and Whitehall into the same cause of action. Dismissal is required for this reason alone.

What's more, the Court need not save the Complaint by imagining claims that the Plaintiffs have not alleged. Even pro se litigants cannot expect courts to construct their legal arguments for them. *Passmore v. Fidelity Brokerage Servs., LLC*, 767 F. Supp.3d 537, 552 (E.D. Mich. 2025) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012)). And here, Plaintiffs filed their Complaint with help from counsel. The Court should not hesitate to dispose of Plaintiffs' ill-formed constitutional claims, just as it has in other appropriate circumstances. *Eljin*, 2025 WL 1222567, at *7. At bottom, the Plaintiffs cannot make a single broad gesture at the First and Fourteenth Amendments and expect the Court to make sense of the rest.

### B. Plaintiffs Fail to Sufficiently Allege First Amendment Retaliation.

Even if the Court were to look past the Complaint's sloppy mishmash of a claim, the Plaintiffs still do not have a case against Bivens. Again, Bivens was well-justified in filtering emails sent from Steel's FOP account because Steel was using it to sow discord within the Whitehall Police Department.

In framing their First Amendment cause of action, Plaintiffs rely on two misguided assumptions. *First*, the Complaint cites the half-baked musings of Whitehall City Attorney Brad Nicodemus. (ECF No. 1, PageID 10–11.) But Nicodemus's views on the First Amendment do not matter and his advice on the email filtering decision is irrelevant. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (rejecting legal conclusions couched as factual allegations as irrelevant in testing the sufficiency of a complaint). *Second*, the Complaint presumes that *any* restriction on the Plaintiffs' speech must be unconstitutional. In reality, "[t]he right to free speech is not absolute, especially

6

when a would-be speaker seeks access to government property as a platform for his speech." *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009).

At its core, the constitutional claim is one for retaliation; that is, the Defendants banned Steel from the City's email system because he sent the failed leadership email. (ECF No. 1, PageID 8.) To state a First Amendment retaliation claim, Plaintiffs must show: (1) Steel "engaged in activity the First Amendment protects"; (2) Bivens undertook "an adverse action" that would deter "individuals of ordinary firmness from doing what they were doing"; and (3) there is a "causal link" between Steel's protected activity and Bivens' adverse action. *Cunningham v. Blackwell*, 41 F.4th 530, 541 (6th Cir. 2022) (quotation omitted). Plaintiffs' allegations, taken as true, do not satisfy these elements.

### 1. Steel's Speech Was Not Constitutionally Protected

Due to his status as a public employee, Steel must satisfy two sub-elements on the first prong of the above First Amendment retaliation inquiry. *Bennett v. Metro. Gov't of Nashville & Davidson Cnty.*, 977 F.3d 530, 537 (6th Cir. 2020). Those elements are: (1) he spoke on a matter of public concern, and (2) his interest in speaking outweigh the interests of Bivens, who was acting in his capacity as Mayor of Whitehall. *Id.* (citing *Pickering v. Bd. of Educ. Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)).

Bivens concedes, for purposes of this motion only, that the failed leadership email touched on a matter of public concern. As a result, the First Amendment analysis turns on the second sub-element, known as the *Pickering* balancing test.

"Because of the enormous variety of fact situations" that could arise under the *Pickering* test, the United States Supreme Court has declined to provide a bright-line rule on when a public entity's interest outweighs a public employee's right to speak. *Pickering*, 391 U.S. at 569; *Connick*

7

*v. Myers*, 461 U.S. 138, 150 (1983). But public employers need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Gillis v. Miller*, 845 F.3d 677, 687 (6th Cir. 2017) (internal quotations omitted). In these contexts, "a wide degree of deference to the employer's judgment is appropriate." *Connick*, 461 U.S. at 151–52. Bodies charged with maintaining public safety get even more deference when dealing with speech that might undermine their operations. *Marquardt v. Carlton*, 2023 WL 395027, at *4 (6th Cir. Jan. 25, 2023) (citing *Gillis*, 845 F.3d at 684).

For example, emergency call center employees have no right to use the n-word in a Facebook comment while discussing politics. *Bennett*, 977 F.3d at 533. This makes good sense; almost everyone agrees that racial slurs are disruptive in almost any employment setting. Likewise, a first responder could not hide behind the First Amendment after wishing on Facebook that he had been the person who killed a twelve-year-old boy shot by police. *Marquardt*, 2023 WL 395027, at *3–4. That kind of speech disintegrates public trust in critical services, and local governments do not have to tolerate it. *Id.*

On Steel's side of the *Pickering* balancing analysis, it is appropriate to "consider the public's interest—or lack thereof—in receiving the information." *Bennett*, 977 F.3d at 539. And the public had no interest in receiving the speech in question. The failed leadership email offered absolutely no insight on the inner workings of the Whitehall Police Department or the problems with Crispen's tenure as chief. Steel's speech amounts to nothing more than an ad hominem attack stemming from a personal beef with Crispen. *See Naughtin v. Montague Fire Dist. Bd.*, 674 Fed. App'x 475, 477 (6th Cir. 2016). So Steel's purported First Amendment interest in the wake of the failed leadership email carries little, if any, weight.

In contrast, Bivens, Crispen, and Whitehall had to look out for the well-being of the police department. According to the Sixth Circuit, "pertinent considerations" for a government employer's ability to regulate the speech of public employees include (a) impairment of discipline by superiors or harmony among co-workers, (b) harm to close working relationships that require personal loyalty and confidence, (c) interference with the regular operation of the enterprise, and (d) undermining of the mission of the enterprise. *Bennett*, 977 F.3d at 540 (quoting *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003)). The failed leadership email checks all four of these boxes, and the first is dispositive.

As is evident from its plain text, Steel crafted the failed leadership email for the very purpose of impairing Crispen's authority and fracturing the harmony among Whitehall employees. Steel must acknowledge as much. Indeed, his failed leadership email is no more than a detail-free attack on Whitehall Police Department leadership. And again, the failed leadership email articulated no specifics on Crispen's wrongs—so of course Steel sent it to make it harder for Crispen to run the Whitehall Police Department. It is hard to imagine a clearer example of using speech to impair discipline. The Court does not need to develop the record to conclude that Steel and the FOP could not send these kinds of emails without a response from those who are concerned with maintaining good order within the Whitehall Police Department.

### a. The Plain Terms of the Collective Bargaining Agreement Between Whitehall and the FOP foreclose the Plaintiffs' Constitutional Claim.

If that weren't enough, Steel and the FOP were contractually barred from using union email accounts for non-union purposes. Section 3.7 of the Collective Bargaining Agreement ("CBA") between Whitehall and the FOP, titled "Use of Intra-Department Mail and E-Mail," provides in relevant part:

> The [FOP] shall be permitted to utilize the intra-Departmental mail and e-mail systems for the purpose of providing information pertaining to [FOP] business or Bargaining Unit representation, to members. The [FOP] agrees that the uses of the mail and e-mail systems shall be reasonable and limited to providing information that is necessary for the normal conduct of [FOP] business or Bargaining Unit representation . . . No confidentiality shall attach to the [FOP]'s use of the e-mail system and the City reserves the right to monitor e-mail content and usage.[2]

This provision of the CBA is enforceable and unambiguously requires Steel to use Whitehall's email system for union business—and union business only. *See Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d Cir. 2012) (citing *Ry. Emps. Dep't v. Hanson*, 351 U.S. 225 (1956)). But Steel's failed leadership email fell outside the scope of the CBA; it had nothing to do with Bargaining Unit representation or normal FOP business. Nor did it further any particular FOP goal or advance the union's relationship with Whitehall. Rather, without factual support or an eye toward the working conditions of FOP members, Steel launched a baseless rhetorical broadside against Crispen. With the plain terms of the CBA in full view, Steel cannot rely on the First Amendment to justify his impermissible use of Whitehall's email system.

### 2.  The Email Block Was Not an Adverse Action

Plaintiffs must also show that the purported adverse action would chill a person of ordinary firmness from continuing to engage in the activity. Limiting Steel's ability to attack Chief Crispen in emails from his FOP account to Whitehall email accounts does not amount to a constitutional injury.

---

[2] The Plaintiffs rely on the CBA to articulate their cause of action and have therefore incorporated that contract into their Complaint. *Ryan v. Flagstar Bank, FSB*, 2023 WL 5610346, at *1 n. 1 (S.D. Ohio Aug. 30, 2023). A true and accurate copy of the CBA is attached as **Exhibit 1**. The same is true for Plaintiffs' references to the failed leadership email, attached hereto as **Exhibit 2**.

In typical retaliation cases, an "adverse action" means termination, demotion, significant reduction in responsibilities, harassment, investigations, arrest, prosecution, denial of permits or benefits, death threats, property destruction, or similar punitive measures. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005); *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 347–48 (6th Cir. 2008). Further, not every limitation or inconvenience imposed by a state actor rises to that level; the law filters out trivial harms and *de minimis* impediments. *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999). An adverse action must create the risk of chilling "a person of ordinary firmness" from continuing to engage in the same activity for fear of retaliation. *Gillis*, 845 F.3d at 683.

*First*, the purported "adverse action" here—the blockage of Steel's FOP email account—is not a constitutional injury. Steel did not get fired or disciplined. He was not arrested. Nor was he punished in any meaningful way. Steel may still use different email address to communicate with anyone in Whitehall. He just can't spread his divisive failed leadership message using his FOP account. This minor administrative inconvenience is not enough to state a cognizable First Amendment claim. *Thaddeus-X*, 175 F.3d at 397.

*Second*, Plaintiffs' own allegations reveal that the email filtering decision did not chill their speech. Quite the opposite. The Complaint describes the Plaintiffs' long history of "advocacy regarding Whitehall." (ECF No. 1, PageID 5–6.) And Plaintiffs' "advocacy" continued *after* the email filtering decision. Indeed, Whitehall City Council has engaged in multiple debates about it.[3]

---

[3] Ironically, Steel continues to align himself with Councilmember Gerald Dixon while Dixon is under investigation by Whitehall police officers—who are also members of the FOP—for criminal sexual misconduct involving minors. *Whitehall police chief provides update on investigation into councilmember Gerald Dixon*, 10 WBNS, www.10tv.com/article/news/local/whitehall-police-chief-provides-update-investigation-city-council-gerald-dixon/530-abb0c22e-6568-4b85-9ae3-e8682d0d56a3 (last visited Mar. 25, 2026).

(*Id.*, PageID 10–15.) And ample alternative communication channels (e.g., phone calls or in-person meetings) have always been available. Plaintiffs also continue to operate mobile billboards in Whitehall, regularly participate in media campaigns about Whitehall, and attend Whitehall City Council meetings. There has been no chilling effect on their speech.

Plaintiffs simply cannot establish an adverse action here. The only alleged harm is an inability to hurl unfounded insults at Crispen using Steel's FOP email account, in violation of the CBA. Apparently, Steel never learned the idiom "don't make a federal case out of it."

**C. Even If the Email Filtering Decision Might Amount to a First Amendment Violation, No Such Right Was Clearly Established When Bivens Authorized that Decision.**

In any event, there is no need to resolve the merits of the Plaintiffs' constitutional claim to dismiss this case. Steel had no clearly established right to access Whitehall's email system with his FOP account after using it to send the failed leadership email, so Bivens is entitled to qualified immunity.

Qualified immunity protects governmental officials so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity protects "the balance . . . between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." *Davis v. Scherer*, 468 U.S. 183, 195 (1984). And because qualified immunity provides immunity from suit—not "a mere defense to liability"—it should be granted at the "earliest possible stage" in the litigation. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *Bell v. Southfield*, 37 F.4th 362, 364 (6th Cir. 2022). Federal courts may dismiss § 1983 claims on qualified immunity grounds without analyzing their constitutional merits. *Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion

12

in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Consequently, § 1983 plaintiffs face a second hurdle, even assuming their constitutional allegations are sufficient. They must show that the unconstitutionality of the alleged conduct was "beyond debate." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018); *see also Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022). In so doing, plaintiffs must define the asserted right "with specificity"—not "at a high level of generality." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (internal quotations omitted); *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011); *see, e.g.*, *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) (explaining that the clearly established "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.") (internal quotation omitted). As a practical matter, § 1983 plaintiffs "must provide on-point case law" clearly establishing their constitutional assertions when confronted with a motion to dismiss on qualified immunity grounds. *Bell*, 37 F.4th at 368.

Steel and the FOP must identify case law that would resolve the First Amendment question in their favor to put the unconstitutionality of the email filtering decision "beyond debate." The problem for Steel and the FOP, of course, is that no such authority exists. No federal court has ever forbade local governments from restricting a public employee from speaking with an intent to undermine police department operations, consistent with the terms of a collective bargaining agreement. Therefore, Bivens lacked notice that his alleged conduct was unconstitutional.

In addition, there is a long line of case law explaining that speech that interferes with public safety services is not constitutionally protected. With that in mind, Plaintiffs cannot show that the alleged First Amendment violation was so clear that Bivens—and "every reasonable official"— would have understood the constitutional problem with the email filtering decision. *DeLanis v.*

13

*Metro. Gov't of Nashville & Davidson Cnty.*, 160 F.4th 732, 742 (6th Cir. 2025) (quoting *Reichle v. Howards*, 566 U.S. 658, 664–65 (2012)).

Bivens assessed the failed leadership email as carrying the same negative implications at issue in *Bennett* and *Marquardt* (cited above). Start by comparing *Bennett* to the allegations here. Steel may not have said the n-word—but his intent to disrupt the Whitehall Police Department and undermine Crispen was even more direct. 977 F.3d at 540. Why else would someone email dozens of police officers accusing the chief of "failed leadership" if not to impair the chief's ability to discipline in the department? *Marquardt* works against Steel and the FOP as well. Bivens and his co-defendants need not accommodate speech that baselessly leads to the "disintegration of public trust" in the Whitehall Police Department's "ability to carry out its public service mission." 2023 WL 3955027, at *4. Placing these principles in the context of the Complaint, Bivens could not possibly have understood that Steel had a clear right to undermine the Whitehall Police Department and Crispen's leadership there.

All told, Bivens had a legitimate reason for the email filtering decision: good order within the Whitehall Police Department and the resulting public safety benefits. Steel and the FOP can say that the email filtering decision violated the First Amendment all they want, but no case has ever given them an uninhibited right of free speech above the interest of preserving a functional police department.

## V.  CONCLUSION

For the reasons set forth above, the Complaint is subject to dismissal. Steel and the FOP have not alleged a colorable First Amendment claim, nor have they shown that their First Amendment rights supersede Bivens' well-justified concern for public safety in Whitehall. And

14

even the deficiencies of the alleged constitutional cause of action could be overlooked (they

cannot), Bivens is immune from this lawsuit.

Respectfully submitted,

*/s/ Janica Pierce Tucker*
Janica Pierce Tucker (0075074)
David C. Roper (0099782)
**TAFT STETTINIUS & HOLLISTER LLP**
41 S High St, Suite 1800
Columbus, Ohio 43215
Tel.: (614) 221-2838
Fax: (614) 221-2007
*jpierce@taftlaw.com*
*droper@taftlaw.com*

*Counsel for Defendant*
*Mayor Michael Bivens*

15

## CERTIFICATE OF SERVICE

I certify that on March 31, 2026, I filed the foregoing document electronically using the

Court's CM/ECF system, which will send a copy to counsel of record.

/s/ *Janica Pierce Tucker*
Janica Pierce Tucker