**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| **The Fraternal Order of Police, Capital City Lodge #9** and **Brian Steel**, | Case No. 2:25-cv-1269 |
| Plaintiffs, | Judge Sarah D. Morrison |
| v. | Magistrate Judge Elizabeth P. Deavers |
| **The City of Whitehall, et al.,** | |
| Defendants. | |

**Plaintiffs' Opposition to Defendant Bivens's Motion to Dismiss**

On March 31, 2026, Defendant Bivens filed a Motion to Dismiss. Defendant Bivens has failed to articulate any reason justifying dismissal. The Motion mischaracterizes the allegations, misapplies the law, and, ironically, in so doing, argues that the email ban stemmed from speaker, content and viewpoint discrimination—substantiating the allegations in the Complaint.

For all the reasons set forth more fully below, this Motion should be denied.

Respectfully submitted,

/s/ Lathan J. Lipperman
Lathan J. Lipperman (0095523)
Cathrine Harshman (0079373) – Lead Counsel
Nicole E. Wannemacher (0078095)
Harshman, Wannemacher, Tipton & Lipperman
4683 Winterset Drive
Columbus, Ohio 43220
Phone: (614) 437-9854
Fax:     (614) 573-6948
Email: llipperman@hcands.com
          charshman@hcands.com
          nwannemacher@hcands.com
*Attorneys for Plaintiffs Fraternal Order of Police,*
*Capital City Lodge #9 and Brian Steel*

**Memorandum in Support**

## I.    Introduction

In the same breath that Defendant Bivens described the City's email system as "an open forum" and "a public forum," he defended banning Plaintiffs from using it to communicate with City officials and elected representatives about matters of public concern. The Motion to Dismiss makes clear—just as the Complaint alleges—that the ban was imposed because Defendants objected to the content and viewpoint of Plaintiffs' speech and because they objected to the speaker. The Motion's tone only reinforces that conclusion, revealing hostility toward Plaintiffs that is entirely consistent with the speaker-based discrimination alleged in the Complaint.

The Motion fails at every level. It wrongly asserts that Plaintiffs were required to plead separate counts for municipal and individual liability. It mischaracterizes the Complaint as asserting only retaliation, even though the Complaint expressly—and plausibly—alleges speaker, content, and viewpoint-based discrimination and interference with the right to petition. And in trying to avoid that reality, the Motion ignores that the ban swept far beyond Steel to every user of an FOP email address, profoundly misapplies *Pickering*, and relies on a collective bargaining agreement that neither waives Plaintiffs' constitutional rights nor authorizes the sweeping email ban alleged here. Finally, the Motion invokes qualified immunity despite decades of clearly established law forbidding government officials from excluding speakers from an official communication channel because they oppose the speaker's view.

At this pleading stage, Plaintiffs were required only to allege a plausible constitutional violation. They have done far more than that. The Motion should be denied.

2

## II.     Factual Background

As set forth in the Complaint, the FOP is a labor union that represents over 4,000 law enforcement officers throughout central Ohio, including officers at the Whitehall Police Department ("WPD"). ECF No. 1, PageID 3. The FOP and its President, Brian Steel, also regularly engage in advocacy on matters of public concern, including regarding issues within the City of Whitehall. *Id*. at 7. That advocacy concerns issues like ticket quotas, the rule of law, and officer safety and takes various forms, including, most relevantly, communicating with elected officials over email. *Id*. at 5-6. In fact, Plaintiffs have communicated with employees and elected officials at the City of Whitehall via email for years. *Id*. at 7.

FOP elected officials, employees, and grievance representatives all use an FOP email address with an "@FOP9" domain. Virtually every employee and elected official at the City of Whitehall uses a governmental email address. *Id*. at 7. Defendant Bivens describes Whitehall's email system as an "open" and "public forum." The City also publicly posts nearly every employee and elected official's Whitehall email address. *Id*. at 6.

In January and February 2025, Plaintiff Steel sent two emails to WPD members, including bargaining-unit members and deputy chiefs, who are FOP members but not covered by a collective bargaining agreement ("CBA"). The first praised supervisors for a recent FOP-representation vote, stating the union remained united despite Chief Crispen's "failed leadership" and that the vote showed "strength, solidarity, and a shared belief in the values and protections" provided by the FOP. The second addressed an incident from the day before in which a WPD deputy chief denied Steel entry to a public event. *Id*. at 8-9.

After the February 2025 email, Defendant Crispen contacted the IT Director and "directed that Steele's (sic) email account be blocked." On or about September 8, 2025, Defendant Bivens

3

acknowledged, in writing, that Plaintiff Steel had been "blocked" from the City's email system. Defendant Bivens modified the email ban such that Plaintiff Steel would be permitted to email members of the bargaining units. *Id*. at 9.

In addition to acknowledging the ban and in fact modifying it, Defendant Bivens has repeatedly and publicly acknowledged the email ban at Whitehall City Council meetings. Defendant Bivens was also publicly counseled by his City Attorney that the email ban violated the First Amendment. The City Attorney also cited case law to that effect and explicitly advised Defendant Bivens to lift the ban. Defendant Bivens refused to do so. *Id*. at 11.

The email ban implemented by Defendants impacted every email address with an "@FOP9" domain. This meant that, initially, *no one* from the FOP could email *anyone* at the City of Whitehall. *Id*. at 9. Even after Bivens modified the email ban, every FOP email address was still blocked from communicating with any City of Whitehall employee or elected official except (purportedly) bargaining unit members, Defendant Crispen and Defendant Bivens. *Id*. at 11.

### III. Argument

#### A. Legal Standard

"To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Smith v. GM LLC*, 988 F.3d 873, 877 (6th Cir. 2021) (citation and internal quotation marks omitted). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation

4

omitted). Likewise, the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). Neither do federal pleading rules "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (citation omitted).

Qualified immunity does not heighten the pleading burden. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). Generally, a right is "clearly established" if precedent gave officials "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002). While existing precedent must place the lawfulness of a particular action beyond debate, "there does not have to be a case directly on point." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (citation omitted). "Of course, there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Id*. (citation omitted).

As has been "repeatedly cautioned," "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Venema v. West*, 133 F.4th 625, 632 (6th Cir. 2025) (citation omitted). Although a qualified immunity determination "is a threshold question to be resolved at the earliest possible point…, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015). In fact, "it is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds

5

given the fact development often needed to decide whether the state official violated clearly established federal law." *Singleton v. Ky.*, 843 F.3d 238, 242 (6th Cir. 2016) (citation omitted).

### B. Plaintiffs have asserted allegations supporting both municipal liability and individual liability against Defendants Bivens and Crispen.

Defendant Bivens argues that individual and municipal liability must be pleaded in separate causes of action. Bivens provides no support for this assertion. ECF No. 14, PageID 78.

Indeed, there is no support for such a claim. Rule 8 requires only "a short and plain statement of the claim," provides that "[n]o technical form is required," and expressly permits a party to plead alternative statements of a claim "either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(a)(2), 8(d)(1)–(2). In turn, separate counts are only required "[i]f doing so would promote clarity." Fed. R. Civ. P. 10(b).

The Complaint here plainly gives notice of both theories. The Complaint expressly names Bivens as a defendant "in his individual capacity" and alleges that he "took part in the implementation and ratification" of the challenged email-ban policy. ECF No. 1, PageID 1, 3. It further alleges that Bivens acknowledged in writing that Steel had been "blocked," modified the email ban, publicly defended the ban before City Council, maintained it after the City Attorney advised that it violated the First Amendment, and described the City's email system as an "open" and "public forum." *Id*. at 9-11. As to the City, the Complaint alleges that Whitehall "has established policies regarding the banning of the FOP from the City's email system" and that those policies prohibit the FOP and Steel from using that system to communicate with City leaders, elected officials, and employees. *Id*. at 3, 16. Those allegations give fair notice of a personal-capacity claim against Bivens and a *Monell* claim against the City.

Not only does the Complaint give fair notice in the abstract, but it also provided actual notice: Defendant Bivens has asserted a qualified immunity defense, a defense available only to

6

officials sued personally. So while on the one hand Defendant Bivens claims this Court must "make sense" of Plaintiffs' Complaint, it is clear Defendant Bivens understands perfectly the allegations and claims against him.

The cases relied on by Bivens, to the extent they exist, support Plaintiffs. Citing *Martinez*, Bivens asserts that "a municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents." But *Martinez* simply reiterates the familiar principle that a municipality is not liable under § 1983 on a respondeat superior theory and that a plaintiff must plead facts supporting municipal liability. *Martinez v. Wayne Cnty.*, 142 F.4th 828, 843-44 (6th Cir. 2025). As set forth above, the FOP's Complaint does exactly that.

Defendant's reliance on *Williams v. Cuyahoga County* is misplaced for the same reason. *Williams* did not hold that a complaint must be dismissed because it contained one constitutional count encompassing both entity and individual defendants. Rather, the court dismissed county officials sued only in their *official capacities* as redundant because the county itself was already a named defendant. *Williams v. Cuyahoga Cnty.*, 776 F. Supp. 3d 661, 675-676 (N.D. Ohio 2025). There is no redundancy here: Plaintiffs did not sue Mayor Bivens and Chief Crispen in their official capacities; the Complaint expressly alleges they are sued in their individual capacities. *Williams* therefore undercuts Defendant's argument rather than supports it.

Finally, even if the Court were to conclude that separate counts would improve clarity, the proper remedy would be amendment, not dismissal of otherwise viable constitutional claims— much less dismissal with prejudice. *City of Shelby*, 574 U.S. at 12.

**C. Plaintiffs have plausibly alleged that Defendants violated their First Amendment rights.**

Bivens next argues that the Complaint must be dismissed because Plaintiffs have failed to sufficiently allege a violation of the First Amendment. ECF No. 14, PageID 78. This argument

fails because the facts set forth in the Complaint plausibly allege that the email ban constituted impermissible discrimination based on viewpoint, content, and the identity of the speaker and denied Plaintiffs the right to petition the government.

### 1. Plaintiffs' Complaint alleges unconstitutional discrimination based on viewpoint, content, and the identity of the speaker.

As a threshold issue, Bivens argues that Plaintiffs have failed to sufficiently allege "First Amendment retaliation." *Id*. at 79. While the facts as alleged might support a retaliation cause of action, that is not what is argued here. The Complaint explicitly asserts that Defendants' email ban "violates the First Amendment and constitutes speaker-based, content-based, and viewpoint-based discrimination" and "impedes Plaintiffs' ability to petition the government for redress of grievances and to engage in core political speech." ECF No. 1, PageID 17. These theories are analyzed under a different framework than a retaliation claim.

The level of scrutiny applicable to a restriction on speech occurring on government property depends on the nature of the forum. There are generally four recognized forum classifications: a traditional public forum, a designated public forum, a limited public forum, and a nonpublic forum. *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010) (citation omitted).[1]

---

[1] Traditional public fora include "sidewalks, parks, and other areas that by tradition or by government fiat are open to public assembly and debate." *Id*. at 534 (internal quotation marks and citation omitted). Content-based restrictions on speech in a traditional public forum are subject to strict scrutiny, where the restriction is upheld "only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 800 (1985). Speech is "content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citations omitted). In contrast, content-neutral time, place, and manner restrictions must be narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (citations omitted).

The allegations made by Plaintiffs in their Complaint, taken as true, would mean Whitehall's email system was, at a minimum, a designated public forum. Plaintiffs have alleged that Defendants publicly post essentially every City employee and elected official's email address; that, for years, Plaintiffs used that system to communicate with dozens of police officers as well as employees and politicians about matters of public concern; that, for years, there were no restrictions on that speech; and that Bivens proudly declared that the email system was an "open forum" and a "public forum." ECF No. 1, PageID 13.

Next, Plaintiffs allege that the email ban resulted from discrimination based on the content, viewpoint, and identity of the speaker. Viewpoint-based discrimination occurs "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Put another way, "The test for viewpoint discrimination is whether—within the relevant subject category—the

---

A designated public forum is created whenever the government "opens a piece of public property to the public at large, treating as if it were a traditional public forum." *Miller*, 622 F.3d at 534 (citation omitted). Government restrictions on speech in a designated public forum are subject to the same standards as a traditional public forum. *Pleasant Grove City v. Summum,* 555 U.S. 460, 470 (2009) (citation omitted).

A limited public forum is created by the government and is "limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Miller*, 622 F.3d at 534-35 (citation omitted). Restrictions on speech in these fora are upheld "as long as the restrictions do not discriminate against speech on the basis of viewpoint and are reasonable in light of the purpose served by the forum." *Id*. (internal quotation marks and citation omitted).

Finally, a nonpublic forum is government property "that is not by tradition or designation 'a forum for public communication.'" *Id*. (citation omitted).  In such a forum, the government may reserve the property for its intended purposes and may impose restrictions based on subject matter or speaker identity, but only if those restrictions "are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 U.S. at 806. Put differently, even in a nonpublic forum, the government may not suppress speech merely because officials oppose the speaker's viewpoint. *Id*. at 800.

9

government has singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 582 U.S. 218, 248 (2017) (citation omitted).

Astonishingly, Bivens's Motion confirmed that the email ban resulted from viewpoint discrimination. Bivens repeatedly asserts that the block was imposed because Steel sent the "failed leadership" email and because Defendants believed that email "undermine[d]" Chief Crispen and sowed "discord" within the Department. ECF No. 14, PageID 79, 87. In other words, Bivens does not defend a neutral, generally applicable access rule. He defends excluding Plaintiffs from a government communication channel because Defendants objected to the content and viewpoint of the message conveyed and to the speaker conveying it.

While Plaintiffs anticipate that the email system will be deemed a designated public forum, it ultimately is irrelevant—especially at this stage of the proceedings. Because even if the email system is a nonpublic forum, where First Amendment protections are weakest, Plaintiffs have plausibly alleged that the ban resulted from speaker, content, and, most relevant here, viewpoint discrimination. And under any forum analysis, even in a nonpublic forum, the government cannot engage in viewpoint discrimination. *Cornelius*, 473 U.S. at 800.

Moreover, Bivens does not show a compelling state interest supporting the ban or that it was narrowly tailored. Even if Defendants had a compelling interest in blocking Steel's emails to police officers—which they plainly do not—Bivens could not explain why the ban applied to every "@FOP9" user or also blocked Steel's emails to elected officials outside the police department.

### 2. Plaintiffs' Complaint alleges denial of the right to petition the government.

Plaintiffs have also plausibly alleged a denial of their right to petition the government, which Bivens chooses not to contest. The First Amendment protects not only a generalized right to speak but also to "petition a local, elected representative for assistance in dealing with local

10

government agencies." *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010). The right to petition includes the right to email elected officials. S*ee Hicks v. Faris*, 2024 U.S. Dist. LEXIS 156509, \*34 (S.D. Ohio 2024) (citing, with approval, *Mirabella v. Villard*, 853 F.3d 641, 654-55 (3d Cir. 2017) (holding that ban on plaintiffs' ability to email township officials infringed on plaintiffs' First Amendment right to petition their government)).

Plaintiffs allege that the email ban prevented Steel and other FOP representatives from emailing Whitehall City Council members about matters of public concern. For example, when Steel emailed a councilman on October 10, 2025, about accountability, transparency, and police staffing, that email was blocked. ECF No. 1, PageID 16. Those allegations plausibly establish a violation of Plaintiffs' right to petition the government.

### 3. Bivens fundamentally misreads and misapplies *Pickering*.

At the core of Bivens's Motion is a profound doctrinal error: He invokes *Pickering* even though that framework applies only when "the government seeks to curtail the speech of *its employees*," in its capacity "*as an employer*." *Lane v. Franks*, 573 U.S. 228, 236 (2014) (emphasis added). But Steel has never worked for the City of Whitehall. [2] Consequently, *Pickering* simply has no application under these facts.

Next, Bivens's supposed defense under *Pickering* illustrates that the email ban was an impermissible act of viewpoint, content, and speaker discrimination. Bivens flatly admits that the

---

[2] Plaintiffs have never alleged that Steel works, or ever worked, for the City of Whitehall. Nor do they allege that any Whitehall employee's speech is at issue. To the contrary, Bivens asserts that Steel's speech prompted the email ban, yet never claims—and could not claim—that Steel was a Whitehall employee. If Steel was not a Whitehall employee, then Defendants were not acting as his "employer." *Lane*, 573 U.S. at 236.

Even if Steel did work for the City of Whitehall, however, Bivens makes no attempt to show that *Pickering* would justify blocking every "@FOP9" email user or otherwise justify banning Steel and all other FOP personnel from contacting elected officials about matters of public concern.

email ban "*was a direct consequence of the failed leadership email.*" ECF No. 14, PageID 77. Defendant Bivens goes on at length over his disagreement with the viewpoint in that email and even reiterates that the ban was "a response" to the failed leadership email. *Id*. at 82.

The Motion is also dripping with personal animosity toward Steel, going so far as to accuse him of "continu[ing] to align himself" with a councilmember under investigation for "criminal sexual misconduct involving minors."[3] ECF No. 14, PageID 84. On the one hand, this attack illustrates that it was not just the message that sparked the ban; it was also the messenger. But it also highlights that the ban was not necessarily only because of the "failed leadership" email as Bivens is plainly upset over political positions the FOP and Steel have previously espoused.

The astonishing admission that Plaintiffs were banned from using the City's email system because Defendants disagreed with the viewpoint of a particular message forecloses any dismissal under 12(b)(6). Indeed, that admission has far-reaching implications: By admitting to the explicit allegations raised in the Complaint, Bivens's Motion to Dismiss can practically be read as a motion for summary judgment for the *Plaintiffs*.

### D. The CBA does not affect the First Amendment analysis.

A CBA does not displace ordinary First Amendment analysis, much less authorize viewpoint discrimination, absent a "clear and unmistakable waiver" of the constitutional right at

---

[3] This gratuitous personal attack is especially telling given Bivens's support of Javier Armengau, a former attorney who was not merely accused, but convicted of rape, kidnapping, two counts of gross sexual imposition, and four counts of sexual battery involving three women, including his own clients or their family members, and who served approximately nine and a half years in prison. *See Columbus Bar Ass'n. v. Armengau*, 2026-Ohio-1230, ¶¶ 11, 15, 17. Bivens nevertheless wrote and filed a letter supporting Armengau's return to practice in which he praised Armengau as "a genius" and characterized his nearly decade-long imprisonment as a mere "brief gap" from practice resulting from "personal tragedy." *Columbus Bar Ass'n v. Javier Horacio Armengau*, Case 2019-0500, Ex. A-1 to Objections and Brief in Support (Oct. 27, 2025). That selective indignation only reinforces Plaintiffs' allegation that the Motion reflects hostility toward Plaintiffs as speakers rather than any neutral application of a time, place, or manner restriction.

issue. *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998). A "general contractual provision" is not enough to find a waiver of a federally protected right; it must be "explicitly stated." *Id*. (citation omitted). And waiver of First Amendment rights "cannot be presumed" but instead must be shown by "clear and compelling evidence." *Janus v. AFSCME, Council 31*, 585 U.S. 878, 930 (2018). Bivens identifies no CBA language waiving Plaintiffs' rights to speak or petition, or authorizing content, viewpoint, or speaker-based exclusion from the City's email system.[4] The CBA therefore provides no basis for dismissal.

### E. The First Amendment protections implicated by the Complaint have been "clearly established" for decades.

Bivens next argues that even if the First Amendment was violated, such a right was not "clearly established." But Bivens's argument fails because it defines the right at the wrong level and around the wrong claim. The Complaint does not allege merely that a "public employee" had some generalized right to criticize police leadership; it alleges that Defendants excluded the FOP and Steel, who, again, is not employed by the City of Whitehall, from a government-controlled and open email channel because of the content and viewpoint of their speech and because of the identity of the speaker.

---

[4] Bivens's argument also fails because, even if the CBA only allows use of the email system for "union business" as he alleges, the Complaint alleges quintessential union business: The emails at issue concerned a vote on FOP representation and a public incident in which a WPD deputy chief allegedly barred Steel from entry because of his union status, prompting rumors among union members. Bivens himself asserts that the viewpoint expressed in those emails prompted the ban. On the pleadings, that is more than enough to plausibly treat the emails as union-related.

Nor has Bivens shown that the cited CBA provision even applies. He relies on language governing "intra-Departmental mail and e-mail systems," ECF No. 14, PageID 83, but Plaintiffs allege that Defendants blocked external "@FOP9" email accounts. Nor, in any event, does Bivens explain how that provision could justify extending the ban to every "@FOP9" user or blocking communications to elected officials about matters of public concern.

For decades, it has been clearly established that even in a limited or nonpublic forum, the government may not restrict access "merely because public officials oppose the speaker's view." *Cornelius*, 473 U.S. at 806. For decades, viewpoint discrimination has been deemed "an egregious form of content discrimination." *Rosenberger*, 515 U.S. at 829. Stated differently, for decades public officials have had "fair warning" that such conduct was unconstitutional. *Hope*, 536 U.S. at 740-41. Even if there was not a wealth of case law on point, that the government cannot prohibit someone from speaking because it disagrees with the viewpoint of a message and dislikes the messenger would also fall into the "obvious case" exception to the "clearly established" jurisprudence. *Wesby*, 583 U.S. at 64.

The right to petition in this context, especially as it concerns Whitehall's elected officials, is equally clearly established. The First Amendment explicitly provides the right "to petition a local, elected representative for assistance in dealing with local government agencies." *Holzemer*, 621 F.3d at 527. Moreover, this very Court has recognized that the right to petition explicitly includes the right to email elected officials. S*ee Hicks*, 2024 U.S. Dist. LEXIS 156509 at *34 (citing, with approval, *Mirabella*, 853 F.3d at 654-55 (holding that ban on plaintiffs' ability to email township officials infringed on plaintiffs' First Amendment right to petition their government)). Banning Steel and the FOP from emailing elected officials about matters of public concern—let alone doing so because of disagreement over viewpoint—also falls into the rare "obvious case," where the unconstitutionality would be clearly established even if there were no precedent on the issue. *Wesby*, 583 U.S. at 64.

Nor can Bivens plausibly claim a reasonable mistake on the facts as pleaded. Plaintiffs allege that Whitehall's own City Attorney publicly advised that the FOP email ban was content based, violated the First Amendment, and should be lifted, yet Bivens continued to defend and

14

maintain the ban anyway. Contrary to Bivens's assertions, Plaintiffs do not contend that the City Attorney's advice is itself dispositive of the clearly-established inquiry. Indeed, whether the City Attorney gave that advice or not does nothing to change the "clearly established" conclusion; but it is powerful evidence that the constitutional defect was apparent to a reasonable official, and it substantially undermines any suggestion that Bivens was navigating some murky legal gray area. The Sixth Circuit has treated comparable advance legal warning as reinforcing notice for qualified-immunity purposes. *See Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 258 (6th Cir. 2015).

In that case, sheriff's deputies cut off plaintiffs' protected speech in response to a hostile crowd reaction. *Id*. at 240-41. Before doing so, however, plaintiffs—a religious organization—had warned the deputies in writing that doing so would violate the First Amendment. *Id*. at 236-37. In addressing whether the plaintiffs' First Amendment rights were "clearly established," the Court noted, among other things, that defendants "were specifically put on notice" by plaintiffs of the applicable precedent before the unconstitutional act. *Id.* at 258. The impact of such a warning would ostensibly apply with even greater force here since it came from the duly elected City Attorney during an official proceeding.

As the rights at issue have been "clearly established" for decades, and Bivens was explicitly put on notice of such by his City Attorney, qualified immunity cannot justify dismissal, especially at this stage.

## IV. Conclusion

For all these reasons, Defendant Bivens has failed to offer any reason warranting dismissal of Plaintiffs' Complaint. In fact, Bivens has made Plaintiffs' case for them by admitting the email ban was instituted because of impermissible discrimination. Accordingly, the Complaint should not be dismissed.

Respectfully submitted,

/s/ Lathan J. Lipperman
Lathan J. Lipperman (0095523)
Cathrine Harshman (0079373) – Lead Counsel
Nicole E. Wannemacher (0078095)
Harshman, Wannemacher, Tipton & Lipperman
4683 Winterset Drive
Columbus, Ohio 43220
Phone: (614) 437-9854
Fax:    (614) 573-6948
Email: llipperman@hcands.com
        charshman@hcands.com
        nwannemacher@hcands.com
*Attorneys for Plaintiffs Fraternal Order of Police,*
*Capital City Lodge #9 and Brian Steel*

16

**Certificate of Service**

I certify that the foregoing document was filed with the Court electronically using the

Court's CM/ECF system on April 14, 2026. That system will also send copies of the foregoing to

counsel of record.

*/s/ Lathan J. Lipperman*
Lathan J. Lipperman (0095523)
*Attorney for Plaintiffs Fraternal Order of Police,*
*Capital City Lodge #9 and Brian Steel*
