IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE FRATERNAL ORDER OF POLICE, et al. | : | Case No. 25-CV-01269 |
| | : | |
| | : | Judge Sarah D. Morrison |
| Plaintiffs, | : | |
| | : | |
| v. | : | **REPLY IN SUPPORT OF** |
| | : | **DEFENDANT MAYOR MICHAEL** |
| THE CITY OF WHITEHALL, et al. | : | **BIVENS' MOTION TO DISMISS** |
| | : | |
| Defendants. | : | |

Plaintiffs Brian Steel and the Fraternal Order of Police argue that "personal animosity" motivated Mayor Michael Bivens to filter emails from FOP accounts, a decision that should result in individual liability for so-called "speaker, content, and viewpoint-based discrimination and interference with the right to petition." (ECF No. 16, PageID 148, 158.) But this case is not about interpersonal feelings or Steel's views. Rather, this case is about Bivens' discretion to look out for the well-being of the Whitehall Police Department. Steel tried to interfere with Chief Mike Crispen's authority with the failed leadership email, and Bivens disallowed Steel from using Whitehall's email domain for that purpose.

The opposition only emphasizes that Plaintiffs' sloppy mishmash of a claim should be dismissed. *First*, Plaintiffs ignore two inconvenient truths: the failed leadership email was not protected speech and the alleged de minimis harm cannot support their constitutional claim. Restricting FOP email accounts cannot be conflated with an actionable First Amendment claim. *Second*, Plaintiffs have produced no caselaw to justify their misuse the Whitehall email system to interfere with the police department against the terms of an enforceable collective bargaining agreement. That caselaw does not exist, and Bivens is entitled to qualified immunity.

**I.      Mayor Bivens Acted to Protect the Whitehall Police Department and His Defenses Have Nothing to Do With Viewpoint Discrimination or Personal Animus.**

Plaintiffs mischaracterize the arguments within Bivens' Motion to Dismiss. They pretend as if Bivens made the email filtering decision simply because Steel opined that "the sky is red and the grass is purple." Yet the Motion does *not* say that Bivens simply disagreed with Steel, so he decided to block Plaintiffs from using the City's email system. (ECF No. 16, PageID 158.) Rather, the Motion points out that "Steel crafted the failed leadership email for the very purpose of impairing Crispen's authority and fracturing the harmony among Whitehall employees," so Bivens acted to "maintain[] good order within the Whitehall Police Department." (ECF No. 14, PageID 82.) In other words, Bivens' conduct and the resulting defenses have nothing to do with Plaintiffs' "viewpoints"—and everything to do with Plaintiffs' transparent attempt to undermine Chief Crispen, impair police department operations, and fracture harmony among Whitehall employees. After all, Chief Crispen is charged with maintaining public safety and discipline within the Whitehall Police Department. The failed leadership email plainly interfered with Chief Crispen's ability to perform those duties. The Court should not be fooled by Plaintiffs' attempt to recast Bivens' well-supported legal defenses into a simple matter of viewpoint discrimination.

Plaintiffs then admonish Bivens for raising Steel's connections to Councilmember Gerald Dixon, characterizing it as a "gratuitous personal attack." (ECF No. 16, PageID 148, 158.) Nonsense. Plaintiffs' communications with Councilmember Dixon are relevant in this litigation. For one, Plaintiffs introduced Councilmember Dixon by mentioning him in their Complaint at least 11 times. (ECF No. 1, PageID 10, 12–14, 16.) For another, Plaintiffs' communications with Councilmember Dixon will be a central focus of discovery, if that becomes necessary. Plaintiffs cannot show that Bivens actually restricted their ability to petition Councilmember Dixon if they did, in fact, continue to contact him after the email filtering decision. Plus, Councilmember

Dixon's role could take on a new degree of relevance if Plaintiffs communicated with him about the Whitehall Police Department's ongoing criminal investigation. Contrast Councilmember Dixon's relevance with Javier Armengau's complete irrelevance. (*See* ECF No. 16, PageID 158.) Mr. Armengau is not mentioned in the Complaint, and the letter of support discussed in footnote 3 of Plaintiffs' opposition has no conceivable relationship with the claims and defenses at issue here. In total, raising Plaintiffs' relationship with Councilmember Dixon in the Motion to Dismiss does not reflect a "selective indignation"—it just shows that Bivens and the Plaintiffs actually agree on something: Plaintiffs' communications with Councilmember Dixon are important in this case.

On the other hand, the Court should disregard Plaintiffs' misperceptions on the tone of Bivens' Motion and the purported "hostility" and "personal animosity" between the parties. (*Id.*, PageID 148.) None of that matters. Plaintiffs do not have to like Bivens or and may even be offended by his stance on their failed leadership email. But those impulses do not allow them to reduce his legal arguments down to a personal or political feud. This case is not about how the parties feel about each other. It is about whether Steel had the right to influence rank-and-file police officers against the leadership of Chief Crispen using Whitehall's email system. Plaintiffs' emotion-fueled arguments only distract from the dispositive legal issues.

## II.     The Complaint Fails to Allege a First Amendment Claim.

Plaintiffs argue that their single cause of action is *not* one for retaliation and should be analyzed as a viewpoint discrimination or Petition Clause claim. (ECF No. 16, PageID 154–55.) But no matter how they brand their First Amendment grievance, the failed leadership email was not protected speech and they have not alleged, argued, or identified any constitutional injury.

3

### A. The Failed Leadership Email was Not Protected Speech.

Bivens' opening Motion points out that Plaintiffs must show that they "engaged in an activity the First Amendment protects." (ECF No. 14, PageID 80 (quoting *Cunningham v. Blackwell*, 41 F.4th 530, 541 (6th Cir. 2022)).) And for good reason: every variety of First Amendment claim requires the plaintiff to satisfy a protected speech element. *Hartman v. Thompson*, 931 F.3d 471, 478 (6th Cir. 2019). But Plaintiffs' opposition has no protected speech analysis—they simply assume the failed leadership email was protected and jump into other arguments. This oversight is telling. Regardless of whether their cause of action is for employer retaliation or some other variety of First Amendment claim, Plaintiffs had no right to use the Whitehall email system to impair Chief Crispen's authority and fracture the harmony in the Whitehall Police Department. (ECF No. 14, PageID 80–82.) Plaintiffs do not address this issue— because they cannot—and their cause of action must fail for this reason alone.

### B. At Most, the Email Filtering Decision Cause De Minimis Harm.

As stated in Bivens' opening Motion, "not every limitation or inconvenience imposed by a state actor" imposes constitutional harm; "the law filters out trivial harms and de minimus impediments." (ECF No. 14, PageID 84 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999)).) This de minimis harm rule comes from an Eighth Amendment case and applies to all constitutional tort claims. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). Thus, district courts may dismiss First Amendment claims that are based upon "inconsequential" injuries. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) (quoting *Bell v. Johnson*, 308 F.3d 594, 603, 606 (6th Cir. 2002)). "Indeed, it trivializes the First Amendment to allow plaintiffs to bring claims for *any* adverse action, no matter how minor." *Id.* (quoting *Bell*, 308 F.3d at 603) (cleaned up).

4

The alleged blockage of Steel's FOP email account is an inconsequential harm and nothing in Plaintiffs' opposition changes that reality. Just like the protected speech issue, Plaintiffs ignore the caselaw on the degree of harm required to support their constitutional claim. (*See* ECF No. 16, PageID 153–57.) Again, restricting Steel's ability to email from his "FOP9.org" account did not threaten his economic livelihood, defame him, intrude on his property interests, disclose intimate or embarrassing information, threaten him with investigation, or chill him—or any person of ordinary firmness—from speaking. *Wurzelbacher*, 675 F.3d at 584 (collecting cases). The caselaw is clear: not all claimed "injuries" tied to speech are sufficient to sustain a First Amendment claim. Conclusory allegations of harm or inconvenience, without a showing of real deterrence or penalty, are not enough.

If anything, the only tangible alleged harm is a purported "denial of their right to petition the government." (ECF No. 16, PageID 156–57.) But even after the email filtering decision, Plaintiffs had access to the Whitehall governing structure through phone calls, in-person meetings, or even a *different email address*. (ECF No. 14, PageID 84–85.) The Constitution is not concerned with "@FOP9.org" when "gmail.com" is readily available, so it's just not accurate to say that Steel—or any other FOP member—lost the right to petition Whitehall government. Under *Wurzelbacher*'s de minimis principle, the slight, easily circumvented impediment at issue here is not an "adverse action" for First Amendment purposes. Similarly, it is not accurate to say Bivens "chooses not to contest" the "alleged denial of [Plaintiffs'] right to petition the government." (ECF No. 16, PageID 156.) As discussed, Bivens' Motion disputes the existence of any constitutional harm—which, by definition, includes Plaintiffs' right-to-petition argument. At the end of the Court's First Amendment analysis, the sole cause of action should be dismissed as too insignificant

for constitutional litigation. Plaintiffs cannot "make a federal case out of it." (ECF No. 14, PageID 85.)

### III. Plaintiffs Fail to Overcome Mayor Bivens' Qualified Immunity Defense with Clearly Established Law.

Plaintiffs define their First Amendment rights at a level of generality far too high and without the requisite caselaw to place their constitutional grievance "beyond debate." *Cunningham v. Blackwell*, 41 F.4th 530, 543 (6th Cir. 2022). A "reasonable official" could have agreed that Bivens had the right to protect the integrity of the Whitehall Police Department from the interference caused by Steel's failed leadership email. *Id.* So even if the Court has some sympathy for Plaintiffs' First Amendment cause of action, Bivens must be dismissed.

As a threshold matter, Plaintiffs never define the claim or claims they are trying to assert against Bivens with any degree of particularity. For example, Plaintiffs say that their cause of action is not one for retaliation, but then rely on a case with an element-by-element retaliation analysis. (ECF No. 16, PageID 157, 160 (citing *Mirabella v. Villard*, 853 F.3d 641, 650 (3d Cir. 2017)).)[1] This begs the question: which aspects of the First Amendment apply to Plaintiffs' claim(s) against Bivens? The opposition does not say. Nor do Plaintiffs even take a position on whether the Whitehall email system is a traditional public forum, limited public forum, or nonpublic forum. (*Id.*, PageID 155–56.) So they cannot even begin to argue that Bivens was on notice of a "sufficiently clear" "legal principle," when they still do not know which forum analysis to apply to their own undefined cause of action. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63

---

[1] Plaintiffs criticize the Motion for its public employer retaliation argument. (ECF No. 16, PageID 154.) But the question of whether the failed leadership email amounts to constitutionally protected speech applies, no matter if Steel spoke as a public employee or a private citizen. *See supra* Section I.A.; *Mirabella*, 853 F.3d at 649 (applying such an element to the First Amendment retaliation claim of non-public-employee plaintiffs). And as Bivens has argued, the failed leadership email was not protected speech because it undermined the provision of public services in Whitehall.

(2018). This is a byproduct of Plaintiffs' sloppy mishmash of a claim and serves as a telling preview on absence of "clearly established" law in their favor.

There is yet another threshold qualified immunity issue: Plaintiffs cannot use their perception of Bivens' subjective intent to overcome his qualified immunity defense. As the Supreme Court has made abundantly clear, "a defense of qualified immunity may not be rebutted by evidence that a defendant's conduct was malicious or otherwise improperly motivated." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998); *see also Jones v. Naert*, 121 F.4th 558 (6th Cir. 2024) (refusing to inject a police officer's subjective intent into a qualified immunity analysis). Of course, it was inaccurate and reductive for Plaintiffs to claim that the email filtering decision was motivated by "personal animosity" and "hostility." (ECF No. 16, PageID 148, 158.) But more than that, Plaintiffs' emotional broadsides are legally inappropriate. The focus must remain on whether Plaintiffs have shown that "clearly established" law forbade Bivens' email filtering decision when he made it. The opposition contains no such showing.

Upon proper framing of the qualified immunity issue, one of Plaintiffs' own cases proves that Bivens is indeed immune from suit. (*Id.*, PageID 157, 160 (citing *Mirabella*, 853 F.3d 641).) In *Mirabella*, the Third Circuit found that the plaintiffs had alleged plausible retaliation and right to petition claims after the individual defendants responded to their litigation threats by "barring [them] from communicating directly with any members of the local government." 853 F.3d at 646, 649–57. But it granted qualified immunity to the individual defendants anyway. Why? Because plaintiffs cannot simply refer to the "right to petition a local, elected representative for assistance in dealing with local government agencies." *Id.* (quoting *Holzemer v. Memphis*, 621 F.3d 512, 527 (6th Cir. 2010)). That generalized assertion is not enough context to define a "clearly established" right—and exactly the reason the *Mirabella* plaintiffs could not proceed. *Id.* (citing *Ashcroft v. al-*

7

*Kidd*, 563 U.S. 731, 742 (2011)). At the end of its opinion, the *Mirabella* court "define[d] the First Amendment right at issue as the right to be free from restriction on communicating with one's government, *when the plaintiff has threatened or engaged in litigation against the government*" and dismissed the individual defendants because "[t]his right was not clearly established." *Id.* (emphasis added). Moreover, the Sixth Circuit has never recognized an absolute right to access local government officials through every conceivable means of electronic communication, no matter the circumstances. *See Blackwell v. City of Inkster*, 596 F. Supp. 3d 906, 924 (E.D. Mich. 2022).

Just like in *Mirabella*, Plaintiffs refer to a generalized "right to petition a local, elected representative for assistance in dealing with local government agencies." (ECF No. 16, PageID 160.) While a generalized right to freely express oneself to local government officials "has been clearly established for decades," the details matter when unpacking the circumstances of the relevant communications. *See, e.g.*, *Blackwell*, 596 F. Supp. 3d at 924 (granting qualified immunity based on the "dearth of Sixth Circuit authority addressing whether blocking critics and deleting their comments on municipal Facebook pages violates the First Amendment"). At bottom, Plaintiffs cannot just say that Bivens restricted their access to local government officials and call it a clearly established First Amendment claim.

From there, Plaintiffs gloss over the unique facets of their own case that prevent the generalized right to petition local government officials from applying in the context of the Complaint.[2] As explained in the opening Motion, First Amendment rights wane when they begin

---

[2] Plaintiffs' generalized and unspecific constitutional assertions are rather ironic, given that police officers are usually on the other side of § 1983 cases, where the requirement for "on-point caselaw" benefits them. *See, e.g.*, *Bell*, 37 F.4th at 368. This principle of qualified immunity must apply evenly, regardless of which side of the "v." a police officer might be on in a given case.

to disrupt public safety and impair discipline and morale. (ECF No. 14, PageID 81–82 (collecting cases).) What's more, the FOP's collective bargaining agreement provides that Plaintiffs' use of Whitehall's "email systems shall be reasonable." (*Id.*, PageID 83.)

On those fronts, Plaintiffs fail to address three unique facets of their Complaint with analogous caselaw. *See Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022) ("a plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered"). *First*, the Plaintiffs have no case to delegitimatize Bivens' interest in protecting the Whitehall Police Department after their failed leadership email. *Second*, Plaintiffs' cases do not explain why it was reasonable for them to use the Whitehall email system to undermine Chief Crispen under the collective bargaining agreement. *Third*, Plaintiffs' cases do not help them explain how they were cut off from petitioning Whitehall elected officials just because their "@FOP9.org" emails were restricted.

The first case the Plaintiffs cite in their "clearly established" section is *Cornelius v. NAACP*, but that case helps Bivens. (ECF No. 16, PageID 160 (citing 473 U.S. 788 (1985)).) The Supreme Court found no First Amendment violation when the government restricted legal defense funds from participating in a charity drive aimed at federal employees and military personnel because the restriction was intended to minimize disruption to the federal workplace. *Cornelius*, 473 U.S. at 813. So too here. Bivens was trying to stop Plaintiffs from disrupting the Whitehall Police Department when he responded to the failed leadership email. The result in *Cornelius* shows that Bivens' email filtering decision was constitutionally permissible.

Plaintiffs cannot rely on *Rosenberger v. Rector & Visitors of the University of Virginia* either. (ECF No. 16, PageID 160 (citing 515 U.S. 819, 829 (1995)).) That case was about the denial of funds to student publications based on their religious viewpoints. *Rosenberger*, 515 U.S. at 845.

9

There was no collective bargaining agreement at play, nor was there an overriding concern that the student publications would use university funding to interfere with the provision of public services. And, as discussed, Bivens did not restrict Plaintiffs' access to the Whitehall email system because he disagreed with their viewpoints—he did it because the failed leadership email interfered with Chief Crispen's ability to lead the police department, impeded operations, and lowered morale. This student newspaper case cannot possibly create "well defined" rights that would apply in the wake of the failed leadership email. *See Bell*, 37 F.4th at 367.

*Hope v. Pelzer* was an Eighth Amendment case, not First Amendment case. (ECF No. 16, PageID 160 (citing 536 U.S. 730, 740–41 (2002)).) For that reason alone, it cannot supply a "clearly established" legal basis for Plaintiffs' claims.

Next, Plaintiffs invoke *District of Columbia v. Wesby*, to argue their allegations against Bivens falls into "the 'obvious case' exception to the 'clearly established' jurisprudence." (*Id.*, quoting 583 U.S. at 64.) Not even close. The obvious case exception is "rare" and did not even apply in *Wesby*. 583 U.S. at 64. Further, Plaintiffs do not provide any examples First Amendment cases that fall within their view of the obvious case exception. Nor do they detail how the obvious case exception could apply, given their own forum uncertainties and Bivens' countervailing interest in maintaining good order in the Whitehall Police Department.

As discussed, Plaintiffs' cannot rely on *Holzemer v. City of Memphis* and *Hicks v. Faris* to substantiate their claims with a generalized right "to petition a local, elected representative." (ECF No. 16, PageID 160 (citing 621 F.3d at 527; 2024 WL 4011824, at *34 (S.D. Ohio Aug. 30, 2024)).) And aside from that generalized right, neither case supplies Plaintiffs with a more specific "clearly established" right that would apply here.

*Hicks v. Faris* is an unpublished case from a district court—but "clearly established" law must come from the Supreme Court or a published Sixth Circuit opinion. *Bell*, 37 F.4th at 368 ("at a minimum, [plaintiff] must provide on-point caselaw that would bind a panel of [the Sixth Circuit]"). And even if the *Hicks* court could articulate "clearly established" law, it would not apply in this case. The *Hicks* plaintiff faced the threat of criminal charges stemming from his emails to the Clermont County Treasurer about her activities with the Clermont County Republican Party. 2024 WL 4011824, at *1. More directly, *Hicks* did not involve interference with police department operations, a collective bargaining agreement, or a de minimis harm—three important circumstances here.

The same is true when comparing this case to *Holzemer*. In *Holzemer*, an official simply refused to interact with the plaintiff about the denial of a permit application, effectively shuttering the plaintiff's business. There is no such harm here; the email filtering decision did not cause Plaintiffs to suffer pecuniary loss or lose a property interest. Nor does the email filtering decision a represent a complete ban on Plaintiffs' ability to communicate with Whitehall officials. Again, Plaintiffs have always been able to petition, they were just restricted from using their "@FOP9.org" email accounts to interfere with the Whitehall Police Department per the terms of the collective bargaining agreement.

Finally, the opinions of City Attorney Brad Nicodemus remain irrelevant to the qualified immunity analysis, and *Bible Believers v. Wayne County* does not change that reality. (ECF No. 16, PageID 160–61 (citing 805 F.3d 228, 258 (6th Cir. 2015)).) The officials in *Bible Believers* were confronted with specific quotations from on-point case law from the Supreme Court and Sixth Circuit—and they violated that law anyway. 805 F.3d at 258. That's not what is alleged here. Paragraph 50 of the Complaint says that Nicodemus "discussed, in detail, a case from the Southern

11

District of Ohio that he believed was on point." (ECF No. 1, PageID 11.) Nicodemus is not a Sixth Circuit or Supreme Court jurist, so his beliefs about the caselaw count for nothing. *See Cunningham*, 41 F.4th at 543 ("if our circuit has yet to take a stand, the law remains unsettled"). More than that, Paragraph 50 does not even raise the inference that Nicodemus confronted Bivens with "clearly established" caselaw. Respectfully, this Court cannot settle an issue of "clearly established" constitutional law, so Nicodemus's references to a Southern District of Ohio case is of no help to Plaintiffs. *Id.* They get no credit for alleging that "Nicodemus Publicly Announces Email Ban is Unconstitutional." (ECF No. 1, PageID 10.)

Each of the cases Plaintiffs cite in their "clearly established" argument (ECF No. 16, PageID 159–61) either justifies Bivens' concern for the Whitehall Police Department or is readily distinguishable from the circumstances presented by the failed leadership email. Thus, Bivens is entitled to qualified immunity.

## IV.     Notice of the Purported Individual Liability Claim Against Mayor Bivens.

Plaintiffs argue that their Complaint gives adequate notice of an individual capacity theory against Bivens, so they need not present their actions against Bivens and Whitehall in separate claims. (ECF No. 16, PageID 152.) Upon review of the caselaw, Bivens concedes the point. *See Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001). Even so, the Complaint still fails to adequately allege a First Amendment claim. (*Supra* Section II.) And Plaintiffs have failed to present clearly established law necessary to support their claim to individual liability against Bivens. (*Supra* Section III.)

* * *

Bivens is entitled to dismissal on both qualified immunity prongs. On the constitutional violation prong, the failed leadership email was not protected speech and the de minimis harm

12

described in the Complaint cannot support a First Amendment Claim. On the "clearly established prong," Plaintiffs' caselaw does not illustrate the well-settled unconstitutionality of Bivens' alleged conduct.

Respectfully submitted,

/s/ *Janica Pierce Tucker*
Janica Pierce Tucker (0075074)
David C. Roper (0099782)
**TAFT STETTINIUS & HOLLISTER LLP**
41 S High St, Suite 1800
Columbus, Ohio 43215
Tel.: (614) 221-2838
Fax: (614) 221-2007
*jpierce@taftlaw.com*
*droper@taftlaw.com*

*Counsel for Defendant*
*Mayor Michael Bivens*

## CERTIFICATE OF SERVICE

I certify that on April 27, 2026, I filed the foregoing document electronically using the

Court's CM/ECF system, which will send a copy to counsel of record.


/s/ *Janica Pierce Tucker*
Janica Pierce Tucker

14